In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1164

CORY M. WELCH,

*Petitioner-Appellant,*

*v.*

RANDALL HEPP,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12-CV-683 — **Nancy Joseph**, *Magistrate Judge.*

ARGUED APRIL 29, 2015 — DECIDED JULY 14, 2015

Before BAUER, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Cory Welch was convicted by a jury of eight counts of armed robbery, conspiracy, fleeing an officer, and misdemeanor bail-jumping. Forty-two witnesses testified against him, including twelve police officers. Two officers in their testimony referred to other criminal charges against Welch. After exhausting his appeals in the state courts, Welch filed a petition under 28 U.S.C. § 2254 asserting that the admission of those statements violated his right

to a fair trial and that his counsel was ineffective for not contesting them. The district court denied relief.

The Wisconsin appellate court had concluded that any error in admitting the two officers' statements would have been harmless because of the quantity and quality of evidence against Welch. We certified the fair-trial question for appeal under 28 U.S.C. § 2253(c). We conclude that the Wisconsin appellate court's decisions on both the ineffective-assistance and fair-trial issues were reasonable, so we affirm the district court's judgment.

I.   *Factual and Procedural Background*

For several weeks a band of armed men were robbing restaurants and businesses in a Milwaukee neighborhood. The robbers wore dark sweatshirts and ski masks, and carried backpacks or duffel bags. One night, police officers saw three men approach a store. They wore dark clothing, with hoods pulled down over their faces. One was carrying a backpack. One of the men attempted to enter the store while the other two flanked the building and watched the street. They found the doors locked and fled. As police officers pursued the men, two jumped into a running green Buick Skylark driven by yet a fourth person. The third would-be robber fled on foot.

The men in the car led police on a high-speed chase, but police soon arrested them and confiscated the car, which turned out to be registered to Welch. Other officers went in search of the man who had not made it into the getaway car. They discovered Welch hiding under a car near the store. Welch first told them he had been carjacked, but he later said he had been "unwittingly duped into being the getaway

driver." *State v. Welch*, 800 N.W.2d 957, ¶ 25 (Wis. App. 2011) (Table). Police searched the car and discovered a backpack, two ski masks, two dark hooded sweatshirts, and a pair of leather gloves.

Welch eventually was charged with sixteen crimes stemming from the string of robberies. See *Welch*, 800 N.W.2d 957, ¶ 2. The charges were severed into two trials. In his first trial, a jury found him guilty of all four counts. In the second trial—the one relevant to this appeal—a jury found him guilty of eight counts of armed robbery. The second trial took nine days. The jury heard testimony from three of Welch's accomplices, five other witnesses who testified about details that linked him to the robberies, two forensic experts, twelve police officers, and twenty robbery victims. The accomplices identified Welch as a participant in five of the robberies. They also testified that Welch had bragged that he had committed 46 robberies, bought his car with robbery proceeds, and called it "the Moneymaker" because he used it to escape robberies.

A number of witnesses testified about how the robberies of their respective businesses occurred, including that they were committed by two black men—one of whom matched Welch's height and weight—wearing ski masks and hoodies, and carrying duffel bags or backpacks. Witnesses also identified a green Buick Skylark at the scenes of the robberies.

Police officers testified that they had searched the car and found two ski masks inside. Forensic experts testified that both masks had DNA almost certainly belonging to Welch on them. One witness also testified that the robber shot at the floor during a robbery. A forensic expert later testified that shell casing found in the store matched the gun that

Welch's girlfriend testified he had taken from her and refused to give back. (The gun had been thrown out of "the Moneymaker" during the police chase but was later retrieved by police.)

During the second trial, two police officers, Officers Simmert and Huerta, made the statements that are the basis of this appeal. In response to questioning by defense counsel, Officer Simmert said: "Based on the things that I know about him, his character, the crimes that I know he's committed, I took a look in the car to make sure that nothing was secreted." Officer Huerta stated (incorrectly): "Yes, I believe that we were in another proceeding with the defendant, Cory Welch, where he was on trial for about 11, 12 other robberies … ." Neither side objected to these statements.

After a series of appeals in state court, Welch moved for post-conviction relief on the grounds, as relevant here, that he was denied the right to a fair trial because the officers' statements had been unfairly prejudicial, and that his trial and post-conviction counsel were ineffective for failing to move for a mistrial because the officers' statements had deprived him of a fair trial. He asserted that the jury would have reached a different verdict absent those statements.

The Wisconsin appellate court denied relief. *Welch*, 800 N.W.2d 957, ¶ 28. The court assumed for purposes of argument that defense counsel erred by failing to ask for a mistrial or raise the mistrial issue later, but found no prejudice, as would be needed for relief under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Welch*, 800 N.W.2d 957, ¶¶ 20–28. The court also evaluated whether the judge erred by allowing the evidence. Citing several cases from Wisconsin, see *State v. Williams*, 644 N.W.2d 919, 931 (Wis. 2002), the court

applied a harmless-error analysis and reviewed whether the error contributed to the conviction. *Welch*, 800 N.W.2d 957, ¶¶ 22–28. The court cited the litany of evidence against Welch, including his changing story about why he was hiding under the car, his accomplices' identifications of him as a co-conspirator, his bragging about committing the robberies, his DNA on the two ski masks, and his ownership of "the Moneymaker." *Welch*, 800 N.W.2d 957, ¶¶ 23–28. The court concluded that if there was any error, it did not influence the verdict.

Welch petitioned in federal court for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied his petition and declined to issue a certificate of appealability. We granted a certificate of appealability for the question whether Welch's right to a fair trial was violated by the officers' improper statements.

II. *Analysis*

As an initial matter, the parties disagree about how we should construe Welch's claim. The state argues that Welch failed to raise the fair-trial claim in any of his state court proceedings and thus has defaulted federal review of it. In oral argument, the state conceded that Welch had exhausted the claim whether he was denied a fair trial when the jury was exposed to the prejudicial information, but maintained that Welch never raised the question whether the judge's actions in admitting the evidence denied him a fair trial. We will not split hairs that finely. In either case Welch argued that the officers' statements made his trial unfair. He exhausted state remedies for the fair-trial claim.

The parties debate whether Welch's trial and appellate counsel were constitutionally ineffective for failing to argue that Welch had been denied a fair trial. But we did not certify that issue for appeal, and the parties did not move to expand the certificate of appealability before briefing it. While appellate jurisdiction requires a certificate of appealability, see 28 U.S.C. § 2253(c)(1); *Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012), a defect in a certificate concerning one claim does not deprive of us jurisdiction over that claim. *Gonzalez*, 132 S. Ct. at 649, and we are not bound to enforce the requirements of 28 U.S.C. § 2253(c) against Welch.

We can consider procedural issues not argued by the parties. *Day v. McDonough*, 547 U.S. 198, 209 (2006). We have repeatedly reminded habeas corpus petitioners, especially when represented by counsel, to request permission before arguing non-certified claims. See *Peterson v. Douma*, 751 F.3d 524, 529–30 (7th Cir. 2014) (we will decide the merits of only certified claims); *Thompson v. United States*, 732 F.3d 826, 831 (7th Cir. 2013) (parties wishing to raise non-certified claims should first request permission to do so), quoting *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (we will not address additional issues unless certificate of appealability is expanded to include them). Limiting appeals to certified issues helps to avoid wasting time of the court and opposing parties, see *Peterson*, 751 F.3d at 530; *Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997), and the interests of justice here do not otherwise require us to consider the non-certified issue, see *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).

In this case the procedural misstep is harmless, though, because Welch cannot succeed under either theory. He did not show that the Wisconsin appellate court's decision was "so lacking in justification" that there is no possibility for "fairminded disagreement." See *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Our review of the state court decision is highly deferential. See *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Campbell v. Reardon*, 780 F.3d 752, 761 (7th Cir. 2015). We review the Wisconsin appellate court's application of the ineffective-assistance and harmless-error standards to determine whether the court applied them unreasonably or contrary to clearly established federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1); *Lopez v. Thurmer*, 573 F.3d 484, 489 (7th Cir. 2009).

Regarding the ineffective-assistance argument, Welch needs to show that the Wisconsin appeals court unreasonably found that no prejudice resulted from the error. See *Strickland*, 466 U.S. at 687. On the fair-trial claim, Welch needs to show that the appellate court incorrectly determined that the comments did not affect the verdict. See *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Chapman v. California*, 386 U.S. 18 (1967); *Jones v. Basinger*, 635 F.3d 1030, 1052–53 (7th Cir. 2011). He has not made either showing.

Welch argues that the evidence against him was weak, and thus that the Wisconsin appellate court's conclusions on both claims were unreasonable. He points to a number of arguable weaknesses in the evidence, including that one of the alleged accomplices changed his testimony and had a prior perjury conviction, and that none of the victims ever

positively identified Welch. (Recall that the robbers wore masks.)

The record supports the state court's application of *Strickland* and its conclusion that no prejudice resulted from any error. The Wisconsin appellate court considered the substantial quantity and quality of the evidence against Welch, including the victims' testimony establishing a clear modus operandi, Welch's flight from law enforcement, his accomplices' testimony identifying him as a participant in multiple robberies, the DNA found on the ski masks, and the duffel bag found in "the Moneymaker," not to mention the existence and name of "the Moneymaker" itself. We also cannot overlook the victims' testimony as to the robbers' heights, weights, and skin tones even if the victims could not identify faces. See, e.g., *United States v. Birk*, 453 F.3d 893, 899 (7th Cir. 2006) (no prejudice from counsel's failure to object to improper character evidence when evidence against defendant was overwhelming); *Cooper v. United States*, 378 F.3d 638, 642 (7th Cir. 2004) (no prejudice when counsel failed to object to improper evidence where evidence of guilt was strong).

On the fair-trial issue, Welch must show actual prejudice under *Brecht*, 507 U.S. at 637; see *Davis v. Ayala*, 576 U.S. —, 135 S. Ct. 2187, 2197–98 (2015). The state court found any error harmless. That determination is subject to deference under 28 U.S.C. § 2254(d)(1). *Davis*, 135 S. Ct. at 2198–99.

The state court's finding of harmless error here was not only reasonable but correct. The state court assumed it was improper to allow the jury to hear the officers' statements but concluded that the comments did not skew the jury's ability to assess accurately the accomplice testimony, the

DNA and ballistics evidence, and all the other evidence tying Welch and his "Moneymaker" to numerous robberies. We agree. Because the evidence against Welch was so strong, the two statements he considers improper neither prejudiced him nor influenced the jury's verdict. See, e.g., *Ashburn v. Korte*, 761 F.3d 741, 755–56 (7th Cir. 2014) (finding reasonable application of harmless-error standard when one exhibit was admitted erroneously; evidence against defendant was "overwhelming"); *Brown v. Rednour*, 637 F.3d 761, 767 (7th Cir. 2011) (finding reasonable application of harmless-error standard when jury took police report into deliberation room; evidence tied getaway vehicle to defendant and several eyewitnesses identified defendant). The state court reasonably denied relief, and the district court correctly did so.

AFFIRMED.